IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior District Judge Richard P. Matsch

Civil Action No. 11-cv-02988-RPM

MICHELLE CASTILLO,

      Plaintiff,

v.

TRINIDAD AMBULANCE DISTRICT, a Colorado Special District,
BRANDON CHAMBERS, in his individual capacity and
DAVE BACHARACH, in his individual capacity,

      Defendants.

---

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Michelle Castillo describes herself as Hispanic of Mexican and Native American heritage. She was employed by the Trinidad Ambulance District ("District") from September, 2000 to May 21, 2010. The District is a governmental entity, providing emergency medical services in Las Animas County, Colorado, governed by an elected board of directors. Castillo began work as a caravan driver and became an EMT-Basic in 2004, the position she held until the end of her employment. Brandon Chambers was appointed Executive Director in November, 2006. He was Castillo's direct supervisor. Dave Bacharach worked as a part-time paramedic with Advanced Life Support certification. Because of that certification he was the team leader of ambulance crews. Bacharach and Castillo worked together almost weekly.

The plaintiff filed this civil action on October 20, 2011, claiming that she was subjected to a hostile work environment because of her race and gender; sexual harassment; disparate

treatment, and retaliation resulting in her constructive discharge.  The District is sued under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*., and for a violation of the equal protection clause of the 14th Amendment to the United States Constitution based on the same conduct.  She seeks damages from the District and from Chambers and Bacharach, individually, under 42 U.S.C. § 1983.

Castillo has provided ample evidence of a sexually abusive work environment from her testimony and that of four other women who were former employees.  The testimony includes unwanted physical contact, solicitation for sexual encounters and pornography.  That misconduct affecting the plaintiff by Chambers began in 2006 and by Bacharach in 2008.

The plaintiff testified that on May 16, 2010, Bacharach fondled her breast and put his hand between her legs. She claims that the repeated acts of Bacharach and Chambers were so offensive that she left the job because the conditions were intolerable.  That would be a plausible claim of constructive discharge but for the contrary evidence that is undisputed showing that she left because of an apparent romantic involvement with the husband of Chambers' administrative assistant, April Martinez.  Phil Martinez, formerly a professional boxer, was not an employee of the District.  He taught boxing classes several days a week at the District's facilities for employees who wanted to improve their physical fitness.  Castillo participated in those classes and developed a close relationship with Phil Martinez.  Both Castillo and Phil Martinez were unhappy in their marriages and confided in each other about their spouses.  On May 21, 2010, Castillo and Phil Martinez left Trinidad and went to Denver, intending to be a couple.  On that day, Castillo and Chambers exchanged the following text messages:

Castillo:       "Brandon, I left Frank. I left in a hurry. Don't think I'm gonna make it back to work."

| | |
|---|---|
| Chambers: | "Wow, where are you going." |
| Castillo: | "I am in Denver can I get my check sent to me please." |
| Chambers: | "Yes. You need to let me know where to send it to or the bank to deposit it into." |
| Chambers: | "Are you alright" |
| Castillo: | "The address is 1180 Raleigh. Sorry Brandon. Thanks for everything. Cindy said she will empty my locker for me" |
| Chambers: | "I will text you on Monday. I will need the complete address." |
| Castillo: | "Okay, there's more to it I'm sure u r gonna hear about it but I will give u the complete address." |
| Chambers: | "More to it?" |
| Castillo: | "Oh yah, I didn't come alone." |
| Chambers: | "With who?" |

(Defs.' Ex. H).

After receiving the plaintiff's text messages, Chambers made arrangements to fill the plaintiff's upcoming shifts. (Chambers Aff. ¶¶ 5, 12).

On May 22, 2010, April Martinez told Chambers that her husband had traveled to Denver with the plaintiff.  April Martinez was very upset.  (Chambers Aff. ¶ 6).

On that same day, the plaintiff's husband (Frank) went to Denver and convinced the plaintiff to return with him to Trinidad.  The plaintiff testified that her husband was mad and told her she needed to get her job back. (Defs.' Ex. B, Castillo dep 324:14-22; 342:16-24).

On May 22, 2010, the plaintiff and Chambers exchanged the following text messages:

| | |
|---|---|
| Castillo: | "Brandon I'm coming back home." |

> Chambers:        "I already filled the shifts"
>
> Castillo:        "Ok so I'm done there"
>
> Castillo:         "I'll work nights Brandon please"

(Defs.' Ex. H, at pp. 12-16).

On May 23, 2010, the plaintiff sent a text to Chambers, asking "Can I have my job back". (Defs.' Ex. H at p. 17; Defs.' Ex. B, Castillo Dep. 321:25 – 323:4).

On May 24, 2010, the plaintiff sent a text to Chambers, stating: "Ok I'm done begging for my job. What do I have to do to withdraw my COERCA. Do I call them". (Defs.' Ex. H at p. 18).

Chambers replied, "You should come into the office this morning and I will explain it all." (*Id.* at p. 19).

On May 24, 2010, Chambers told the Plaintiff that she would not be rehired because she had not given two-weeks' notice of her resignation and because allowing her to return to work would create a hostile work environment for April Martinez, in light of the circumstances of the plaintiff's departure with April Martinez's husband.  (Defs.' Ex. A, Chambers Aff. ¶ 7; Defs.' Ex. B, Castillo dep. 341:18 – 342:4; Defs.' Ex. J, Castillo dep. (*Guara v. City of Trinidad*, et al.) 40:18-25).

It is apparent that Castillo left her job abruptly, acting impulsively and it may be assumed that her husband coerced her into returning to Trinidad and to try to get her job back.  It is also assumed that comparable employment would be difficult to find in Trinidad and that this couple needed the money.  One may have compassion for the plaintiff in difficult circumstances but no reasonable juror could find that she fled because of her work conditions or that Chambers

refused to re-employ her in retaliation for complaints about those conditions.  Accordingly, the claim of constructive discharge is not tenable.

The plaintiff does have viable claims for sexual harassment and hostile work environment for which non-economic damages may be awarded.

Contrary to the defendants' argument, the § 1983 claims are not barred as a matter of law by the two-year limitations period supplied by C.R.S. § 13-80-102.  Federal law controls the question of when a § 1983 claim accrues.  Accrual of a hostile work environment claim under Title VII is governed by the continuing violations doctrine.  *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  There is no principled reason for applying a different rule in the context of § 1983.

The individual defendants deny liability for damages by contending that they did not act under color of state law and that they are entitled to qualified immunity.

Chambers was the plaintiff's direct supervisor and the evidence is clearly sufficient to show that he was a state actor.  The determinations of whether Chambers' actions were tied to his position or taken as a result of personal motivation involve factual questions to be determined at trial.

The plaintiff's evidence is also sufficient to create a triable issue about whether Bacharach was a state actor.  The District's operating procedures provide that the "Team Leader is responsible for everything that happens or fails to happen from clock-in that beginning of the shift to clock-out at the end of the shift, as it relates to the crew's activities."  Bacharach's leadership position allowed him to evaluate and report about the plaintiff's work performance.

The determination of whether he was a state actor involves the weighing of evidence to be presented at trial.

The law was well established that sexual harassment under color of state law violates the Equal Protection clause. *See Woodward v. City of Worland*, 977 F.2d 1392, 1393-98 (10th Cir.1992); *Starrett v. Wadley*, 876 F.2d 808, 814 (10th Cir.1989). The plaintiff has shown sufficient evidence for trial with respect to the individual defendants' conduct.

With respect to the District's liability under § 1983, the plaintiff's evidence is sufficient to present an issue for trial. Although the District's official Policy Manual expressly forbade sexual harassment, the District's Policy Manual and procedures also gave Chambers the ultimate authority to handle sexual harassment investigations and ultimate authority with respect to employee discipline, hiring and firing. Reasonable jurors could conclude that he was the final decisionmaker with respect to matters of harassment and discrimination within the District. The evidence of Chambers' conduct and his toleration of Bacharach's conduct presents a jury question about whether the District had a custom of tolerating sexual harassment.

The District is the only defendant with potential liability under Title VII. It has asserted the *Ellerth/Faragher* affirmative defense, which allows an employer to avoid vicarious liability for supervisor harassment in a sexual harassment/hostile work environment claim by proving: (1) it exercised reasonable care to prevent and promptly correct any sexually harassing behavior, and (2) the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).

The merits of that affirmative defense cannot be determined on summary judgment because there are genuine factual disputes about whether the District's sexual harassment policy was disregarded in practice; whether the District exercised reasonable care to prevent and correct incidents of sexual harassment; the effectiveness of the District's procedures for reporting sexual harassment, and whether the plaintiff unreasonably failed to take advantage of the District's reporting procedures.  Significantly, there is a factual dispute about whether employees realistically could bypass Chambers and complain directly to the Board about sexual harassment.

Accordingly, it is

ORDERED that the defendants' motion for summary judgment is granted as to the claim of constructive discharge and disparate treatment on the failure to re-hire her.  The defendants' motion is denied with respect to the other claims under 42 U.S.C. § 1983 and Title VII.

Dated:  July 12, 2013

BY THE COURT:

s/Richard P. Matsch

_____

Richard P. Matsch, Senior District Judge